## BENJAMIN T. HARLEY, Appellant, *v.* WM. S. HEYL, Respondent.

The act of 1852 authorized the plaintiff to erect a powder magazine in the city of San Francisco, reserving certain rights to the State. The second section provides, "That after notice of twenty days in the newspapers of the said city having been given by the superintendent of the magazine of the erecting thereof as provided by this act, no person shall keep in any one house or place within said limits, more than five (afterwards increased to twenty-five) pounds of gun powder at any one time under penalty of one hundred dollars. The ninth section enacts that the Common Council of San Francisco shall have power to authorize by ordinance the building of other powder magazines, and to appoint superintendents. The owners of powder may store in either of the magazines created by ordinance or law paying the fees, &c., allowed, where the same is stored. The city had the right, under her charter prior to the act of 1852, to have a powder magazine, and had exercised the right, and was in the exercise of it when the said act was passed; but had passed *no ordinance* on the subject *after the passage of the act*, but continued to exercise the right under her charter.

Held that the act of 1852 did not give to the superintendent of the magazine authorized by it, the exclusive right to store all the powder in the city. That the right existing in the city at the passage of the act, was not repealed by it; and that the right of the city to her magazine for the storage of powder was concurrent with that of the grantee in the act.

APPEAL from the Fourth Judicial District.

The complaint states that the Legislature at its last session passed an act to provide for the erection of a powder magazine in the city of San Francisco; and plaintiff avers that he is the B. F. Harley in the said act named; and that he had erected at his own expense a powder magazine at San Francisco at a point sanctioned by the mayor of said city, which was ready for use on the 2d July, 1852; and that he gave notice of such erection as provided by the act; and that he, on the 27th April, 1852, was appointed superintendent of said magazine by the Governor of the State; and avers that since the passage of the said act, the Common Council of the city have not authorized the building of any magazine, or appointed a superintendent; and avers that defendant now has in storage in said city in a building other than the said magazine over 1000 kegs of powder, and is constantly receiving powder on storage, and refuses to desist from

so doing, &c., or to deliver the same to the plaintiff; which is acting in violation to the said act, and to the damage of plaintiff; and unless restrained, he will continue to receive the same to the injury of plaintiff. The plaintiff therefore prays for an injunction to restrain defendant from receiving and storing powder, &c. Complaint filed 24 July, 1852; and defendant ordered to show cause, &c.

The defendant came into Court, and being sworn, said, that since the 15th of November, 1851, he has been engaged in receiving and storing powder in a magazine erected within the city, under a joint resolution of the Common Council of the said city, passed Nov. 13th, 1851; that he is the same Heyl mentioned therein, and continues to receive and store, &c., and the same is done solely by the authority of the Common Council of the city as aforesaid.

Annexed to the complaint, was filed a copy of the act therein referred to, which enacts, sect. 1, that "B. F. Harley is hereby authorised to erect, at his own expense, a powder magazine, in the vicinity of San Francisco, at such place as shall be sanctioned by the mayor; provided that the said magazine may be used by the State of California free from all charge, for the deposit of such arms and amunition as the governor may direct to be stored therein.

Sect. 2nd. That after twenty days notice shall have been given in the newspapers of the city, by the superintendent, no person shall keep, in any one house or place within said limits, more than five pounds of gunpowder, at any one time, under penalty of $100.

The 3d, 4th, 5th, 6th, and 7th sections, regulate the sale of powder in the city.

Section 8. The governor shall appoint a superintendent of the powder magazine, who shall hold his office two years.

Section 9. The Common Council of San Francisco shall have power to authorise *by ordinance*, the building of other powder magazines, and to appoint superintendents. The owners of powder may store in either of the magazines created by ordinance, or law, paying the fees, &c.

The defendant claims under the following Resolution of the Common Council:—Resolved that Messrs. Heyl and Winslow

be, and are hereby authorised to keep a powder magazine for the storage of powder, subject to such regulations as the Common Council may deem advisable, and upon such charges as may suit the public interest; and their time of keeping the same, to be optional with the Common Council. Approved Nov. 13th, 1851.

July 27th, 1852, the rule was discharged, and plaintiff appealed.

*Cooke*, for appellant.

Plaintiff has an *exclusive* right to store powder, until the Common Council *shall have acted* under the 9th section of the act—this was the intention of the legislature—for if not *exclusive, nothing is granted,* and a burden is imposed on plaintiff by the statute, by the free use of his magazine, required by the State. If the law confers no right on the appellant, it is absurd and unjust. He has spent his fortune in erecting it, and gives it to the State without price.

The statute is in the nature of a contract between Harley and the State; the latter secures certain privileges, and grants an equivalent to him; but if the grant is not exclusive, there is no equivalent. He is to build, at his own expense. "*No person* shall keep, on his *own premises,* over five pounds at one time. The superintendent is to remove *all* powder to *his* magazine," &c.; such is the language of the act.

The statute is *prospective* in every feature,—it recognises nothing past.

Defendant relies on the ordinance and resolution of the city. The ordinance was passed under the first charter of the city, which gave the council power to regulate the storing of powder, and locate powder houses. The act is subsequent to both, and by implication repeals them, being repugnant in their provisions; Bacon's Abr., statute D., 226. By the ordinance, the Common Council *locate;* by the statute, *this* is the duty of the mayor;— here is repugnancy, and the ordinance must give way. Respondent may locate where he pleases, unrestrained by law or ordinance.

It is said the power is concurrent in the State and in the city; that each may have its own superintendent, &c.; the city cannot have one, unless the power is conferred by the State through

her charter; and where the State has prescribed the mode, and regulations of appointment, can the city appoint in a different way?

The city have not exercised the power given under the 9th section; the power is not disputed, but the city is *silent;* and cannot be said to conform to the statute, when the statute prescribes different rules from those previously in existence.

The penalty prescribed in the statute, is no argument against the application for an injunction. An indictment on behalf of the public, and a civil action for the individual, lie for the same offence.

*Bates* and *Rice*, for Respondent.

The plaintiff claims an exclusive right to store powder, till the City of San Francisco authorises the building of other powder magazines, &c., under the law of 1852. Did the act take away the authority of the Common Council, from passing ordinances in relation to the subject; and did it annul, *ipso facto*, the ordinance then in existence, appointing Heyl? Sect. 9, of the act, gives the power to the councils to authorise, by ordinances, the building of other magazines, and to appoint superintendents. It cannot be said that the ordinance of June 27th, 1850, and Nov. 13th, 1851, were invalid prior to the passage of the act. This act neither amends the charter nor invalidates any portion of it, nor the prior action of the council upon any of its provisions. The section under which respondent claims, gives *concurrent* powers with those before conferred on the Common Council; which the city had exercised when the appellee was appointed. He was exercising the powers then—at the passage of this act— and is still. The act does not repeal these concurrent grants, but reserves them. It would be an anomaly, if the city have power by sect. 9, to authorise the building of other powder magazines, and appoint other superintendents; and have no power to select buildings already erected, and to confirm the acts of superintendents previously appointed. The act continued the powers of the city as they stood before its passage, as relates to this question. The appellee was not affected by the 9th section; it left him just where it found him, and the Court properly refused the injunction.

The opinion of the Court was delivered by

ANDERSON, Justice.—This case comes up under the act passed at the last session of the legislature, entitled "an act to provide for the erection of a powder magazine in San Francisco." The first section provides, that B. F. Harley is authorized to erect, at his own expense, a powder magazine in the city of San Francisco, under the direction of the mayor.

Under the second section he claims the exclusive privilege of storing all powder within the limits of said city, except such limited quantities as it otherwise provides, may be kept by other houses. That section is in the following words. "That after notice of twenty days in the newspapers of said city, having been given by the superintendent of the magazine of the erection thereof, as provided for by this act, no person shall keep in any one *house*, or *place*, within said limits more than five pounds of gunpowder at any one time, under a penalty of $100 for each offence." The third section extends the right of keeping powder to the amount of twenty-five pounds.

It is insisted under these provisions, that B. F. Harley possesses the exclusive privilege of storing all powder in the city held by any person, over the amount of twenty-five pounds. And that any act of the city authorities of San Francisco, prior to the passage of the late law under consideration authorizing the erection of other magazines, or giving a license or grant to any other person to store any greater quantity of powder than is within the limits designated, is null and void.

This interpretation therefore would put an end to the regulations upon this subject, which were made conformably to the charter prior to the passage of the late act; and by the same rule it would follow, that such regulations can only be made legally by the exercise of the same power first asserted to be destroyed, and then reconferred at the same time—but enacted subsequent to the latter.

But such was clearly not the design of the legislature. The existing regulations made by the city under its respective charters, prior to that act, were not intended to be disturbed. If we construe the several charters of the city, and the late act *pari materia*, the previously established policy would hold, and the

31

city would still possess full and concurrent power upon this subject. The last section of the late act shows that there was no purpose to curtail the powers of the city in this respect. It redeclares that power. To suppose, therefore, that so much of the charter of the city as conferred full power over the subject was intended first to be repealed, and then re-enacted, would be absurd.

It was not a new creation of power by the first section of that act, but was an enlargement of that particular power to the corporate authorities. The terms apply exclusively to the *powder magazine.* This may be considered as contradistinguished to the words "house, place, and building," as used in the second and third sections of that act, clearly to signify private powers, places and buildings. Any other construction of the laws would be every way exceptionable, and would confound the established policy upon this subject, and the plainly declared will of the legislature. They look to the Common Council of the city of San Francisco as a fit residuary of that police power. They designed to repeal nothing or they would have said so. The omission taken in connection with those views is conclusive.

If we further pursue the distinction as we should, between the phraseology in the second and third sections of the late act, in comparison with the language of both the old and new charters, it will also be obvious that the former had simply reference to private houses and places not licensed or sanctioned as magazines by the city; and the last section of the act, by repeating that power as contained in those charters, was evidently made with a view to protect the authority of the city against any contrary construction.

Under the old charter, the city possessed the power of licensing and sanctioning such magazines; and the same is also true of the last charter. That power remains. Any other interpretation than this would be contrary to long established rules, by which we must be guided in comparing laws upon the same subject.

The Court below granted a rule to show cause why an injunction should not issue in this case against Heyl, and upon final hearing, discharged that rule. '

The order of the Court below was right. Let it be confirmed, with costs.